**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID KEITH FARLEY,

      Petitioner,               Civil No. 04-CV-72222-DT
                                  HONORABLE GEORGE CARAM STEEH
v.                             UNITED STATES DISTRICT JUDGE

BLAINE C. LAFLER,

      Respondent,

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

      David Keith Farley, ("petitioner"), presently confined at the Mound Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1] In his application, filed by attorney David A. Dodge, petitioner challenges his conviction and sentence on three counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(f); M.S.A. 28.788(2)(1)(f).  For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I.  Background

      Petitioner was convicted of the above offenses following a jury trial in the Allegan County Circuit Court.   The Court recites verbatim the relevant facts

---

[1]   When petitioner originally filed this application for a writ of habeas corpus, he was incarcerated at the Saginaw Correctional Facility in Freeland, Michigan.

regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> On the evening of September 22, 2000, the seventeen-year-old victim and her friend, Terry Seneker, made plans to go out together. Seneker and defendant, an acquaintance, picked the victim up from her home. The trio went to the liquor store where defendant, who was over the age of twenty-one, purchased a fifth of liquor. The group subsequently went to defendant's place of employment, a "barn-type" structure in Moline. Several other friends and acquaintances arrived and a party started. The majority of individuals at the party, including the victim and defendant, were drinking alcohol.
>
> Several hours after the party started, the victim and defendant drove away from the party in a large, white Lincoln automobile. The victim testified that, after driving a short distance, defendant drove the automobile into a deep ditch filled with water. The prosecution alleged that while the vehicle was in the ditch, five sexual penetrations occurred. Evidence of five, separate sexual acts was offered at trial. The victim testified that she told defendant "no," tried to escape, and suffered both physical and mental injuries, as a result of the sexual assaults. Defendant testified that only one sexual penetration occurred, that the victim initiated it, and that it was consensual. His theory at trial was that the victim lied about the sexual assaults because she was remorseful and was afraid that her boyfriend or parents would find out about her conduct.
>
> The jury acquitted defendant of two charges of first-degree CSC [criminal sexual conduct], involving alleged acts of oral penetration. They convicted defendant of the other three charges of first-degree CSC.
>
> *People v. Farley,* 234789, * 1 (Mich.Ct.App. April 29, 2003).
>
> Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 469 Mich. 975;

671 N.W. 2d 884 (2003)(Cavanagh and Kelly, JJ. would grant leave to appeal).

2

Additional facts will be discussed when addressing petitioner's claims.  Petitioner now seeks the issuance of a writ of habeas corpus.  For purposes of judicial clarity, the Court will paraphrase petitioner's three claims, rather than recite them verbatim:

> I.  Petitioner was deprived of his Sixth Amendment right of confrontation.
>
> II.  The evidence at trial was legally insufficient to convict petitioner of first-degree criminal sexual conduct.
>
> III.  Petitioner's due process rights were violated when the jury instructions did not inform the jury that they had to make a unanimous factual finding as to each sexual act alleged.

## II.  Standard of Review

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

### III. Discussion

Before discussing the merits of the case, this Court needs to address the

respondent's failure to respond to two of the three claims raised by petitioner in

his application for habeas relief. In his reply to the respondent's answer,

petitioner notes that the respondent in her answer claimed that petitioner was

raising five claims in his habeas petition. Petitioner noted that the respondent's

list of claims only referred to two of the claims being raised in the petition and

incorrectly listed three claims which were not raised in the petition. Petitioner

further noted that respondent did not list, much less respond to, his third claim

involving the failure of the trial court to give a specific unanimity instruction to the

jury. Petitioner further notes that although respondent recognized that petitioner

had raised a sufficiency of evidence claim, none of the arguments raised by

4

respondent addressed the arguments raised by petitioner about the sufficiency of evidence to convict him of the three first-degree criminal sexual conduct charges for which he was convicted.  Instead, respondent merely argued that petitioner could not obtain relief on a sufficiency of evidence claim involving the two first-degree criminal sexual counts for which he had been acquitted. However, petitioner did not challenge the sufficiency of evidence for these two counts in this petition.

The Court will not consider respondent to have waived her argument in this case by failing to address two out of the three claims raised in the petition, because to do so "would be tantamount" to granting a default judgment to petitioner in this case, which is a form of relief unavailable in habeas proceedings. *See Alder v. Burt,* 240 F. Supp. 2d 651, 677 (E.D. Mich. 2003)(citing to *Allen v. Perini*, 424 F. 2d 134, 138 (6th Cir. 1970)); *See also Gordon v. Duran,* 895 F. 2d 610, 612 (9th Cir. 1990)(failure of state to respond to five of eight claims raised in habeas petition did not entitle habeas petitioner to default judgment on those claims).  While this Court believes that respondent's failure to respond to two out of three of the claims demonstrates a lack of respect for the Court, as well as a lack of regard for the gravity of the matters raised in this case, *See Carpenter v. Vaughn,* 888 F. Supp. 635, 648 (M.D. Pa. 1994), such failure is not a basis to grant habeas relief to petitioner, because the burden of proof in a habeas proceeding is on the petitioner. *See Allen v. Perini,*

5

424 F. 2d at 138 (petitioner not entitled to default judgment because petitioner has burden of establishing that his custody is in violation of the U.S. Constitution). [2]

The Court also agrees with petitioner that respondent's conclusory response on page two of her answer is of no consequence to determining whether habeas relief should be granted or denied.  The points must be raised with specific arguments. *See Brown v. Palmer,* 358 F. Supp. 2d 648, 651 (E.D. Mich. 2005). [3]

### A.  Claim # 1.  The Confrontation Clause claims.

Petitioner first claims that the trial court violated his right of confrontation on two occasions, which restricted his ability to fully explore the bias and motivation of the victim.

Petitioner first claims that the trial court interfered with his right of confrontation when it refused to allow defense counsel to question the victim about the fact that her underage consumption of alcohol would have constituted

---

[2]  This Court further notes that respondent initially filed the wrong answer in this case. [See Court Docket Entry # 7].  After the Court informed the respondent of the error, respondent filed the correct answer in this case [Court Docket Entry # 23], albeit one that failed to respond to two out of the three claims in this case.

[3]  The answer states: "Respondent asserts any and all available defenses including failure to exhaust state court remedies, the statute of limitations, and procedural default for each claim to which it is applicable.  To the extent that any of the alleged trial errors are meritorious, Respondent asserts that they did not have a substantial impact or influence on the outcome of Petitioner's trial.  Respondent also objects to Petitioner's statement of facts to the extent that the statements are not supported by the record. Respondent opposes any request for discovery, evidentiary hearings, bond, oral argument, or any other relief." [Respondent's answer, p. 2]

6

a violation of a probationary sentence that she was serving for retail fraud. Petitioner contends that this information would have shown the victim's motive or bias to fabricate these sexual assault charges.

The Michigan Court of Appeals ruled that petitioner had failed to explain how evidence that the victim's probation could be violated as a result of her consumption of alcohol would establish a motive on her part to fabricate a sexual assault charge against him. The Michigan Court of Appeals opined that to the contrary, the answer to the question could actually have strengthened the victim's testimony. The Michigan Court of Appeals further observed that the victim admitted that she had been drinking alcohol on the night of the sexual assaults and had testified that she was afraid to inform the police about being sexually assaulted because she was drinking alcohol and did not want her parents to find out about her conduct. The Michigan Court of Appeals concluded that the fact that the victim eventually went to the police, knowing what the consequences of her alcohol consumption might be, would not have assisted petitioner's case. *People v. Farley,* Slip. Op. at * 2. The Michigan Court of Appeals further concluded that petitioner was given a reasonable opportunity to test the victim's bias and motivations, because the victim testified that she was on probation for retail fraud, and acknowledged that she was not supposed to be drinking alcohol on the night in question. *Id.*

The Sixth Amendment Confrontation Clause guarantees the accused the

7

right to cross examine adverse witnesses to uncover possible biases and

expose the witness' motivation in testifying. *See Davis v. Alaska*, 415 U.S. 308,

315-316 (1974).  However, the Confrontation Clause guarantees only an

opportunity for effective cross-examination, not cross-examination that is

effective in whatever way, and to whatever extent, that the defendant might wish.

*United States v. Owens*, 484 U.S. 554, 559 (1988)(internal citations omitted).

The Confrontation Clause of the Sixth Amendment does not prevent a trial judge

from imposing limits on a defense counsel's inquiry into potential bias of a

prosecution witness; to the contrary, trial judges retain wide latitude insofar as

the Confrontation Clause is concerned to impose reasonable limits on such

cross-examination based on concerns about, among other things, harassment,

prejudice, confusion of the issues, a witness' safety, or interrogation that is

repetitive or only marginally relevant. *Delaware v. Van Arsdall*, 475 U.S. 673,

679 (1986).

A state trial court "may circumscribe cross-examination if the party is

unable to lay a proper evidentiary framework; where the offer is 'inherent[ly]

speculative[]'; [and] the trial judge may 'prohibit [] cross-examiners from

mounting fishing expeditions.'"*DiBenedetto v. Hall,* 272 F. 3d 1, 11 (1st Cir.

2001)(*quoting Bui v. Di Paolo,* 170 F. 3d 232, 244 (1st Cir. 1999)).  A court has

the discretion to exclude bias evidence on the ground that it is only remotely

relevant. *United States v. Maliszewski,* 161 F. 3d 992, 1010 (6th Cir. 1998).  In

8

light of the fact that any evidence that the victim's probation could have been revoked because of her underage drinking would only have been remotely relevant to establishing a motive for her to fabricate these allegations, the exclusion of such evidence did not deprive petitioner of his right of confrontation. *Cf. Harrington v. Jackson,* 1 Fed. Appx. 367, 371-72 (6th Cir. 2001)(exclusion of testimony of third-party witness on issue of whether government witnesses used drugs with each other and the victim did not violate the petitioner's right to present a defense, since the excluded evidence did not suggest a strong motive for the witness to falsify his testimony).

More importantly, counsel was not precluded from extensively questioning the complainant about her credibility and any possible biases or motivation that she may have had for falsifying these charges against petitioner.  On direct examination, the victim admitted that she did not initially want to contact the police, because she did not want her parents to learn that she had been out drinking alcohol on the night in question. (T. I, p. 182).  The victim further admitted on direct examination that she had been convicted of retail fraud. (*Id.* at p. 190).  The victim admitted that she knew that she was not supposed to be consuming alcohol on the night in question. (*Id.* at p. 191).  The victim again admitted that she did not want to contact the police at first, because she knew her parents were going to be angry at her for going out and drinking, instead of going out with some of her friends, as she had told her parents she was going to

9

do. (*Id.* at pp. 191-92).

On cross-examination, the victim admitted that she had lied to her parents.(*Id.* at p. 197).  The victim confirmed that she mentioned to petitioner her boyfriend as a reason why she didn't want to have sex with petitioner. (*Id.* at p. 203).  The victim also admitted that when she went to Planned Parenthood the next day for a "morning after" pill, she did not tell them that she had been sexually assaulted, because she did not want them to contact the police, fearing that her parents would find out that she had been drinking. (*Id.* at p. 228).  The victim testified that when she informed her boyfriend about being sexually assaulted, he became angry.  Her boyfriend initially hung up on her and then insisted that the victim call the police.  The victim, in fact, acknowledged, that it was her boyfriend who called the police and reported the incident. (*Id.* at p. 229). The victim acknowledged being on probation. (*Id.* at p. 233).  The victim acknowledged that she did not want to contact the police because of her parents, and that she only went to the police after her boyfriend contacted the police, who informed the victim that she had to personally make the report. (*Id.* at pp. 233-34).

In this case, even assuming that the trial court erred in refusing to allow petitioner's counsel to explore whether the possible revocation of the victim's alcohol consumption constituted a motive to falsify sexual assault charges against petitioner, any possible error was harmless, thus precluding habeas

10

relief on petitioner's Confrontation Clause claim, given other evidence presented upon which petitioner could have established the victim's motive to fabricate the sexual assault charges against petitioner. *See Norris v. Schotten,* 146 F. 3d 314, 330 (6th Cir. 1998). Because of the extensive nature of the questions by petitioner's counsel regarding the complainant's motives and credibility, as well as the speculative nature of the line of inquiry, petitioner's Sixth Amendment rights were not violated by the exclusion of the evidence that the complainant's probation could be revoked as a result of her underage consumption of alcohol. *DiBenedetto v. Hall,* 272 F. 3d at 11.

Petitioner also claims that the trial court improperly limited the questioning of prosecution witness Callan Bell, when the trial court refused to allow petitioner to impeach the victim's testimony by cross-examining Bell about statements that the victim had made to her the day after the sexual assaults. The Michigan Court of Appeals held that the trial court properly sustained the prosecutor's objections to this line of questioning, because defense counsel sought to use extrinsic evidence of the victim's prior inconsistent statements without first affording the victim a chance to explain or deny the statements, as required by M.R.E. 613(b). *People v. Farley,* Slip. Op. at * 3.

In the present case, the trial court excluded petitioner's line of inquiry, because petitioner had failed to lay the proper foundation for the admission of this evidence. Requiring a defendant to lay a foundation for the admissibility of

11

certain evidence does not violate the Confrontation Clause. *See Dell v. Straub,*
194 F. Supp. 2d 629, 644 (E.D. Mich. 2002)(citing *Reddick v. Haws,* 120 F. 3d
714, 717 (7th Cir. 1997)).  Although the U.S. Supreme Court has held that states
must allow cross-examination of witnesses to undermine a witness's testimony,
"[i]t has never held–or even suggested– that the longstanding rules restricting
the use of specific instances and extrinsic evidence to impeach a witness's
credibility pose constitutional problems.  No federal court of appeals has done so
either." *Hogan v. Hanks,* 97 F. 3d 189, 191 (7th Cir. 1996).  At least one federal
court has held that the right of confrontation was not violated by the trial court's
exclusion of a witness' prior inconsistent statement pursuant to F.R.E. 613(b),
the federal counterpart of M.R.E. 613(b), when defense counsel was unable to
establish that the witness made this prior inconsistent statement. *See United
States v. Adames,* 56 F. 3d 737, 744-45 (7th Cir. 1995).  In this case, the trial
court did not violate petitioner's right of confrontation, because trial counsel did
not lay the proper foundation for the introduction of the victim's prior inconsistent
statements to Bell. *Cf. Gore v. Dugger,* 763 F. Supp. 1110, 1125-26 (M.D. Fla.
1989).

　　　Finally, even if the trial court erroneously excluded the victim's alleged
prior inconsistent statements to Bell concerning the sexual assaults, petitioner's
rights under the Confrontation Clause were not violated, because petitioner had
an ample opportunity to conduct an effective cross-examination of the victim and

impeached her credibility with evidence which suggested a motive on her part to fabricate these charges against petitioner. *See Laboy v. Demskie,* 947 F. Supp. 733, 742 (S.D.N.Y. 1996). Petitioner is therefore not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The sufficiency of evidence claim.

Petitioner next claims that there was insufficient evidence to convict petitioner of three counts of first-degree criminal sexual conduct.  The Michigan Court of Appeals made the following findings:

> In this case, defendant was charged with count I with digitally penetrating the victim. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to determine that the elements of that charge were proved beyond a reasonable doubt. There was sufficient evidence of both penetration and force or coercion. Defendant drove the automobile into a ditch full of water. It was approximately 2:30 a.m., and the victim was unfamiliar with the rural area. She had been drinking alcohol for several hours and was underage. Defendant was aware of these facts. While they were in the ditch, defendant placed his hand up the victim's shirt and rubbed her breasts. She told him that he could not do what he was doing and physically pushed his hand away. A short time later, however, defendant put his hand between the victim's legs. She again protested, saying that she could not do anything with defendant because of her boyfriend. Defendant ignored these protestations and told the victim not to worry. He undid her belt, put his hands in her pants and completed the act of penetration with his fingers, which the victim testified caused her pain. Defendant continued to tell the victim not to worry while she continued to talk about her boyfriend and tell defendant "no." In sum, defendant ignored the intoxicated victim's wishes and forced himself on her while they were in an isolated area. In addition, there was sufficient evidence of personal injury. The victim suffered an internal vaginal wound, which was bleeding upon examination. There was testimony that the wound could not have been caused by a penis but could have been caused by a fingernail.

13

The victim also had two crescent shaped lacerations inside her labia. There was testimony that these may also have been caused by fingernails.

Counts III and IV charged defendant with two acts of sexual penetration of the victim's vagina with defendant's penis. Viewing the evidence in a light most favorable to the prosecution, the evidence was again sufficient to enable a rational trier of fact to determine that both counts were proved beyond a reasonable doubt. The victim testified that defendant penetrated her vagina with his penis on two occasions. Both acts took place after the victim managed to get out of the car, tried to run away, was caught, and was hit in the face by defendant. He called her a "psycho bitch" and told her to get back into the car, which was located in the ditch in a rural area. The victim testified that she reentered the car because she was scared. Inside the car, defendant held her and removed her clothing. She believed there was nothing she could do. She told him "no," and cried while he put his penis into her vagina. He stopped the assault when another vehicle passed. He subsequently pulled the victim on top of him, scaring her. A second act of penetration then occurred, during which defendant covered the victim's mouth with his hand. This testimony was sufficient to show that defendant used force to either induce the victim to submit, or to allow defendant to seize control of her for the purpose of accomplishing, the two acts of penile/vaginal penetration. [citation omitted]. The evidence of personal injury was also sufficient. Testimony was presented that the victim's vagina sustained significant injuries. The area was red, swollen, and painful to the victim following the assaults. There were also several small lacerations. In addition, the victim had bruises on her left knee and left flank, which she believed were caused when she tried to get away from defendant outside of the car and he grabbed her and pulled her onto the ground. The victim also testified that a bruise later formed on her left temple in the area where defendant hit her. A police officer who interviewed the victim testified that she saw a red mark on the victim's left temple. An initial assault before two acts of penetration may satisfy the personal injury element of both penetrations. [citation omitted]. Furthermore, there was evidence of mental anguish. The victim testified that she was scared and crying throughout the sexual penetrations. Defendant continued to call her a "psycho bitch" and, after the penetrations, he informed her that she would never see her best friend again. The victim has required counseling for her resultant depression.

14

*People v. Farley,* Slip. Op. at * 4-5.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F. Supp. 2d at 647. "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Gardner v. Kapture,* 261 F. Supp. 2d 793, 805 (E.D. Mich. 2003)(*quoting Walker v. Engle*, 703 F. 2d 959, 970 (6th Cir. 1983)). Finally, a habeas court does not substitute its own judgment for that of the finder of fact. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 606 (E.D. Mich. 2002).

Under Michigan law, first-degree criminal sexual conduct is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances in the first-degree criminal sexual conduct statute. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 686 (E.D. Mich.

15

2003)(citing *People v. Garrow*, 99 Mich. App. 834, 837-38; 298 N. W. 2d 627 (1980)).

In the present case, petitioner was convicted of first-degree criminal sexual conduct under a theory that he used force or coercion to engage in sexual penetration with the victim with personal injury resulting. Force or coercion and personal injury are essential elements of first-degree criminal sexual conduct. *People v. Baker,* 103 Mich. App. 255, 257; 303 N. W. 2d 14 (1981). The "force or coercion" needed for a first-degree criminal sexual conduct conviction includes physical force or violence, threats of force, threats of retaliation, inappropriate medical treatment, or concealment or surprise. *People v. Brown,* 197 Mich. App. 448, 450; 495 N. W. 2d 812 (1992)(citing to M.C.L.A. 750.520b(1)(f)). Force or coercion is not limited to physical violence but should instead be determined in light of all of the circumstances. *Id.* Coercion, for purposes of a criminal sexual conduct prosecution, may be implied, legal, or constructive, and as such, extends to situations that do not involve the accomplishment of sexual contact or sexual penetration by raw physical force or threats of physical violence. *People v. Reid,* 233 Mich. App. 457, 469; 592 N. W. 2d 767 (1999).

In the present case, a rational trier of fact could conclude from the evidence that petitioner used force or coercion to commit the sexual assaults upon the victim. Petitioner drove his vehicle into a ditch full of water in an

16

isolated, rural area at 2:30 a.m.  The victim was underage and intoxicated.

Petitioner ignored the victim's repeated rebuffs of his sexual advances and

digitally penetrated her.  Regarding the two counts of sexual penetration of the

vagina with petitioner's penis, there was also adequate evidence of force or

coercion.  Both of these sexual acts took place after the victim got out of

petitioner's car and was caught by petitioner after trying to run away.  Petitioner

also hit the victim in the face, called her a "psycho bitch," and ordered her to get

back into the car.  Inside the car, petitioner removed the victim's clothing and

inserted his penis into her vagina, while the victim cried and said "no".  During

the second act of penetration with his penis, petitioner placed his hand on the

victim's mouth.  This evidence was sufficient for a rational trier of fact to

determine that petitioner used force or coercion to get the victim to submit to the

assaults.

Likewise, there was sufficient evidence presented to establish the

personal injury element of first-degree criminal sexual conduct.  The term

"personal injury," for purposes of Michigan's first-degree criminal sexual conduct

statute, is defined as "bodily injury, disfigurement, mental anguish, chronic pain,

pregnancy, disease, or loss or impairment of a sexual or reproductive organ."

M.C.L.A. 750.520a(j).  Under Michigan law, physical injuries need not be

permanent or substantial to satisfy the personal injury element of M.C.L.A.

750.520b(1)(f). *See People v. Mackle*, 241 Mich. App. 583, 596; 617 N.W.2d 339

17

(2000).

With respect to count 1 involving digital penetration, there was evidence that the victim suffered an internal vaginal wound, which was bleeding upon examination.  The examining nurse testified that this wound could have been caused by a fingernail.  The victim also had two crescent shaped lacerations inside her labia, which the nurse also testified could have been caused by fingernails.  A rational trier of fact could conclude that the personal injury element had been satisfied with respect to this count.

With respect to counts 3 and 4 involving penile penetration, there was testimony presented that the victim's vagina was red, swollen, and painful. There were also several small lacerations.  The victim also had bruises on her left knee and left flank, which she believed were caused when she attempted to escape from petitioner and he grabbed her and pulled her on the ground.  The victim also had a bruise on her head from where the petitioner hit her.  Bruises to a sexual assault victim are sufficient to satisfy the personal injury element of first-degree criminal sexual conduct. *See People v. Himmelein,* 177 Mich. App. 365, 377; 442 N.W. 2d 667 (1989).  Further, an assault upon a sexual assault victim immediately prior to a series of sexual assaults is sufficient to supply the element of personal injury with respect to a first-degree criminal sexual conduct conviction under § 520b(1)(f). *See People v. Martinez,* 190 Mich. App. 442, 44-45; 476 N.W. 2d 641 (1991); *People v. Hunt,* 170 Mich. App. 1, 8-9; 427 N. W.

18

2d 907 (1988).

This Court also concludes that there was sufficient evidence of mental anguish to support petitioner's convictions.  The term "mental anguish", for purposes of the first-degree criminal sexual conduct statute, does not mean something more than the emotional distress experienced by the "'average' rape victim." *See People v. Petrella,* 424 Mich. 221, 258; 380 N.W. 2d 11 (1986).  "[I]n order to support a conviction of first-degree CSC, based on the aggravating factor of mental anguish, the prosecution is required to produce evidence from which a rational trier of fact could conclude, beyond a reasonable doubt, that the victim experienced extreme or excruciating pain, distress, or suffering of the mind." *Id.* at 259.  Although not exhaustive, the Michigan Supreme Court suggested that the following factors could be used to determine whether the victim suffered from mental anguish as a result of the sexual penetration:

> (1) Testimony that the victim was upset, crying, sobbing, or hysterical during or after the assault.
> (2) The need by the victim for psychiatric or psychological care or treatment.
> (3) Some interference with the victim's ability to conduct a normal life, such as absence from the workplace.
> (4) Fear for the victim's life or safety, or that of those near to her.
> (5) Feelings of anger and humiliation by the victim.
> (6) Evidence that the victim was prescribed some sort of medication to treat her anxiety, insomnia, or other symptoms.
> (7) Evidence that the emotional or psychological effects of the assault were long-lasting.
> (8) A lingering fear, anxiety, or apprehension about being in vulnerable situations in which the victim may be subject to another attack.
> (9) The fact that the assailant was the victim's natural father.

19

*People v. Petrella,* 424 Mich. At 270-71.

In the present case, the victim testified that she was scared and crying throughout the sexual penetrations. Petitioner called the victim a "psycho bitch" and, after the penetrations, informed her that she would never see her best friend again. The victim required counseling for her resultant depression. Under the circumstances, there was sufficient evidence of mental anguish presented to support petitioner's conviction for first-degree criminal sexual conduct. Petitioner is not entitled to habeas relief on his second claim.

**C. Claim # 3. The jury instruction claim.**

Petitioner lastly contends that his right to a fair trial was violated when the trial court failed to instruct the jury that they had to unanimously agree as to which of the sexual acts that petitioner had committed before they could find him guilty of any of the first-degree criminal sexual conduct charges.

The Court notes that petitioner did not raise the jury instruction issue with the Michigan Court of Appeals, raising it only for the first time in his application for leave to appeal with the Michigan Supreme Court. Raising a claim for the first time before the state courts on discretionary review does not amount to a "fair presentation" of the claim to the state courts for exhaustion purposes. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because petitioner failed to present this claim in his appeal with the Michigan Court of Appeals, his subsequent presentation of this claim to the Michigan Supreme Court did not

20

satisfy the exhaustion requirement for habeas purposes. *See Schroeder v. Renico,* 156 F. Supp. 2d 838, 844, n. 5 (E.D. Mich. 2001); *Winegar v. Corrections Department*, 435 F. Supp. 285, 288-89 (W.D. Mich. 1977).

The Court declines, however, to dismiss the petition on the ground that it contains unexhausted claims. A habeas petitioner may not present a "mixed" petition containing both exhausted and unexhausted claims to a federal court. *Rockwell v. Yukins*, 217 F. 3d 421, 423 (6th Cir. 2000). However, a habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). A habeas petitioner's failure to exhaust his or her state court remedies is not a bar to federal habeas review of the claim "when the claim is plainly meritless and it would be a waste of time and judicial resources to require additional court proceedings." *Friday v. Pitcher,* 200 F. Supp. 2d 725, 744 (E.D. Mich. 2002); 28 U.S.C. § 2254(b)(1)(A)(c). Because petitioner's claim lacks merit, in the interests of efficiency and justice, the Court will address petitioner's claim, rather than dismiss the petition on exhaustion grounds. *Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999).

Petitioner's unanimity claim is without merit. The trial court gave the jury a general unanimity instruction. [4] That is all that is constitutionally required. There is no general requirement that a jury reach agreement as to the preliminary

---

[4] T.III, p. 60.

factual issues which underlie the verdict. *Schad v. Arizona,* 501 U.S. 624,

632(1991).  When a single crime may be committed in various ways, jurors need

not agree on the mode of commission. *United States v. James*, 172 F. 3d 588,

593 (8th Cir. 1999).

     In the present case, petitioner's claim does not entitle him to habeas relief

because a general unanimity instruction was given, no objection or other request

was made, and petitioner has failed to show any actual likelihood of juror

confusion but merely speculated as to the possibility. *See Tillman v. Cook*, 25 F.

Supp. 2d 1245, 1303 (D. Utah 1998).  The Sixth Circuit has even held that with

respect to criminal trials in federal court, a specific unanimity instruction is

required only when one of three situations exists: (1) the nature of evidence is

exceptionally complex; (2) there is a variance between the indictment and the

proof at trial; or (3) there is tangible indication of jury confusion, as when jury has

asked questions of the court. *See United States v. Washington,* 127 F. 3d 510,

513 (6th Cir. 1997).  In this case, the nature of the evidence was not

exceptionally complex.  Nor is there any allegation of any variance between the

criminal information filed in this case and the proofs at trial.  Finally, there is no

evidence of jury confusion.  In light of the foregoing, the trial court's failure to

give a specific unanimity instruction did not violate petitioner's right to a fair trial.

Petitioner is not entitled to habeas relief on his third claim.

## IV. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of

Habeas Corpus is **DISMISSED WITH PREJUDICE.**

s/George Caram Steeh

GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: October 24, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on October 24, 2005,
by electronic and/or ordinary mail.

s/Josephine Chaffee

Secretary/Deputy Clerk